UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO.  3:03CR00160(AHN) |
| THEODORE WELLS | : | November 24, 2004 |

<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

The Defendant, Theodore Wells, respectfully submits this memorandum as an aid to the Court at sentencing.

**I. Background.**

**a. Procedural background.**

The government initially charged Mr. Wells in a two count indictment alleging violations of 18 U.S.C. §§ 2423(b) and 2423(a) respectively.  Count I alleged that Mr. Wells traveled in interstate commerce for the purpose of engaging "in a sexual act" with a minor.  Count II alleged that he transported the same minor in interstate commerce with the intent that she "engage in sexual activity." In July 2003, Mr. Wells informed the government that he would plea guilty to count I.  The parties agreed on the terms of a written pretrial agreement, which included a stipulation concerning calculation of the sentencing guidelines resulting in a sentencing range of 70-87 months.  Literally on the eve of the change of plea proceeding, however, the undersigned counsel discovered the apparent applicability of guideline section 4B1.5, which called for a sentencing range substantially higher than the one agreed upon in the plea agreement based on Mr. Wells' prior conviction for sexual conduct involving a minor. The undersigned counsel informed the government of this guideline section and the parties re-commenced negotiations concerning the sentencing range.  Given this development, the anticipated change of plea hearing never went forward.

The parties eventually agreed that Mr. Wells would plead guilty to a charge of kidnapping, thereby avoiding application of guideline section 4B1.5.  However, the written plea agreement still reflected Mr. Wells' acknowledgment that "sexual contact" occurred between he and the minor.  <u>See</u>

- 2 -

Plea Agreement at 4.

**b. Factual background.**

      Mr. Wells' childhood is one that has been marred by disturbing incidents of physical and sexual abuse, humiliation, and physical adversity. Born cross-eyed and legally blind, Mr. Wells is able to see only a few inches in front of his face. This impairment combined with his frail physique made him the target of constant teasing growing up. Unfortunately, Mr. Wells' home life offered no refuge from the abuse he suffered outside the home. For one thing, Mr. Wells has no memories of his natural father, who he believes left the family shortly after Mr. Wells' birth. Moreover, while his mother worked to provide the material necessities for her children, she provided no emotional nourishment and was "very manipulative, controlling, and not supportive." PSR at ¶ 53.

      Adding to his already troubled life Mr. Wells, at the age of seven, became the victim of repeated abuse at the hands of a local priest assigned to his family's parish. Id. at 54. This abuse lasted for more than one year and included repeated incidents of verbal, physical, and sexual abuse. The priest would often "berate, blame, and belittle" Mr. Wells. This abuse, combined with the aforementioned turmoil, created in Mr. Wells an overriding sense of inferiority and need for acceptance.

      Compounding these feelings, Mr. Wells suffered another humiliating experience at age ten while attending a boarding school for exceptional children. Throughout that entire school year, Mr. Wells was the victim of incessant bullying, taunting, and physical assaults from other children. Although Mr. Wells reported these incidents to his mother, she refused to let him come home or relieve him from this predicament, even though the school was only five minutes from her home. This disregard for her son was simply one of many instances of neglect and abuse Mr. Wells' mother showed towards him. In addition to her lack of sympathy, Mr. Wells' mother would periodically kick him out of her house. She would then report him as a runaway, but refuse to take him back when the authorities would contact her. This forced Mr. Wells to spend several periods of time in homeless shelters and juvenile centers. As a teenager, Mr. Wells' mother also had him involuntarily committed to a mental health hospital, where he stayed for a significant period of time.

- 3 -

This long, unrelenting history of abuse and humiliation has had some very serious consequences for Mr. Wells. Most significantly, his shame and depression led him to attempt suicide on three different occasions. Moreover, Mr. Wells believes he suffers from a multiple personality disorder. Whether this is a legitimate diagnosis or not, it does demonstrate, along with the suicide attempts, the significant mental health issues which have developed as a result of the experiences Mr. Wells suffered, and with which he has been forced to cope.

A final experience which added to Mr. Wells' unusually strong sense of self-deprecation was his failed marriage to Terri Kase. The couple met in 1985 and married that same year. At first, Mr. Wells appeared to have found in his wife the acceptance and emotional connection that had eluded him previously throughout his life. However, their relationship gradually deteriorated, and caused Mr. Wells more emotional and mental health issues. PSR at ¶¶ 59-60. The couple eventually divorced, and Mr. Wells has had no serious contact with his wife since that time.[1]

Knowing firsthand the effects of abuse on an individual, Mr. Wells in recent years made a sincere effort to help others who are also the victims of abuse. Proficient in the area of computers, Mr. Wells created an internet service which allowed abuse survivors to anonymously contact support groups, and find help coping with the life long effects of abuse. It is understood that thousands of adults have benefitted from this service. Moreover, Mr. Wells has also recently realized his own need for counseling and treatment, and is anxious to take part in any counseling programs available within the Bureau of Prisons.

**II. Discussion.**

**a. The Court's ability to depart upward pursuant to guideline section 5K2.21.**

The probation office has informed the undersigned counsel of the Court's contemplation of departing upward from the calculated guideline range in this case pursuant to section 5K2.21, "dismissed and uncharged conduct." The presentence report also references this section as a possible

---

[1] Counsel notes that Mr. Wells' ex-wife has submitted a letter of support for him, documenting her knowledge of him during their time together. Counsel was able to obtain this letter through other friends of Mr. Wells.

- 4 -

basis for an upward departure. PSR at ¶ 87. Presumably, this departure would be based on conduct alleged in the indictment, which the government has agreed to move to dismiss. However, the calculated guideline range stated in the plea agreement and correctly calculated in the presentence report already accounts for the conduct referenced in the indictment. Therefore, it would be inappropriate for the Court to depart upward on this basis.

Section 5K2.21, which is a "policy statement," states that a court may increase a particular sentence "based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement . . . **and** (2) that did not enter into the determination of the applicable guideline range." USSG § 5K2.21 (2001) (emphasis added). Given that these prerequisites are listed conjunctively, both must exist before a court may depart upward under this section. Normally, the base offense level for the crime of kidnapping is a level twenty-four. USSG § 2A4.1(a) (2001). However, in Mr. Wells' case, his base offense level is increased four levels, from twenty-four to twenty-eight, given that the offense of conviction involved "sexual contact." PSR at ¶ 30. Thus, the conduct underlying the charges that presumably will be dismissed have already "enter[ed] into the determination of the applicable guideline range." USSG § 5K2.21(2). In fact, were Mr. Wells convicted of all three counts listed in the superseding indictment his offense level, under the grouping rules, would still be a level twenty-eight.[2] In light of these facts, it would be inappropriate to increase Mr. Wells' sentence even further pursuant to section 5K2.21.

---

[2] The applicable guideline provision for a conviction under count I is 2A3.2. This section provides for a base offense level of 24. Viewing the calculations in a light most favorable to the government, two additional levels could arguably be added pursuant to 2A3.2(b)(3) for use of the internet. This would provide a total offense level of 26 for count I. The applicable guideline provision for convictions under counts II and III is 2G1.1. This section provides for a base offense level of 19. Again viewing the calculations in a light most favorable to the government, two levels could be added pursuant to 2G1.1(b)(2)(B) given the age of the minor, and two more levels could be added pursuant to 2G1.1(b)(5) for use of the internet, for a total offense level of 23. Under the grouping rules, Mr. Wells' offense level would be 26 pursuant to section 3D1.4, and two levels would be added as the convictions for counts II and III would count as one unit each, for a total offense level of 28.

Case 3:03-cr-00160-AHN    Document 50    Filed 11/29/2004    Page 5 of 6

- 5 -

**b. Downward departure due to childhood abuse.**

Mr. Wells' history demonstrates that he suffers from a mental impairment. He realizes that he is in need of and will benefit from counseling, and is eager to participate in any available programs. Another thing clear from Mr. Wells' history is that the trauma he experienced growing up, which is the genesis of his mental health issues, also played a significant role in the instant offense. Given that his traumatic childhood contributed significantly the commission of the instant offense, Mr. Wells respectfully requests that the Court exercise its authority to depart downward from the recommended sentencing range in this case. See <u>United States v. Rivera</u>, 192 F.3d 81, 85-86 (2nd Cir. 1999).

The Second Circuit has recognized that "abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions." <u>Id.</u> at 85. Accordingly, a district court in this circuit "may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." <u>Id.</u> In Mr. Wells' case, there can be no question that the physical, emotional and sexual abuse he repeatedly suffered as a child significantly contributed to his conduct in the present case.

What is particularly compelling about Mr. Wells' background is not necessarily the severity of the incidents of abuse, although a number of episodes were very traumatic, but the frequency and length of time over which the incidents occurred and the deficiencies they created. For practically his entire childhood, Mr. Wells suffered abuse of one form or another. This continuous pattern developed in Mr. Wells, as mentioned, a desperate need for acceptance. As he matured, however, and learned that there was a lack of resources available to help adult victims of childhood abuse, he also saw the need to help others who experienced the same trauma as he suffered. Thus, he made efforts to provide others with the means of finding help for their personal struggles. Unfortunately, Mr. Wells' legitimate efforts to help others became confused with his own efforts to address his need for acceptance. This confusion led to his conduct in question in the instant case. Indeed, Mr. Wells' unresolved mental and emotional issues clouded his reason and thinking, and contributed to his actions. Therefore, a departure is

- 6 -

warranted. Id.

## III. Conclusion.

Mr. Wells' long history of abuse and his corresponding mental and emotional disorders were motivating factors behind his conduct in the present case. His awareness of his need for counseling and eagerness to participate in an appropriate program also demonstrates his appreciation of the wrongfulness of his conduct and the need to change his ways. Mr. Wells respectfully requests that the Court take these unique and mitigating circumstances into account when imposing sentence in this case.

Respectfully submitted,

THE DEFENDANT,
THEODORE WELLS

THOMAS G. DENNIS
FEDERAL DEFENDER


Dated:  November 24, 2004

Thomas P. Belsky
Asst. Federal Defender
2 Whitney Ave., Suite 300
New Haven, CT 06510
Bar No. ct24770
(203) 498-4200

## CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing has been mailed to James Glasser, Assistant United States Attorney, P.O. Box 1824, New Haven, CT 06508, on this __24th__ day of November 2004.


Thomas Belsky