UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :

v.                                              Criminal No. 3:03CR160(AHN)

THEODORE W. WELLS, JR.          :         August 3, 2005

GOVERNMENT'S MEMORANDUM
ON *CROSBY* REMAND

**I.      Preliminary Statement**

Theodore W. Wells, Jr. is a repeat sexual predator who targeted vulnerable young girls and inveigled them to submit to him and to perform sexual acts on him.  When Mr. Wells was before the Court on December 2, 2004, he faced a sentencing guideline range of 78-87 months' imprisonment.  The Court departed upward from the calculated range founded on U.S.S.G. §§ 5K2.21 (Dismissed and Uncharged Conduct) and 4A1.3 (Inadequacy of Criminal Histoy Category) and  sentenced him to ten (10) years' imprisonment to be followed by a five (5) year term of supervised release.  Thereafter, the defendant filed a timely notice of appeal.  On June 1, 2005 the Second Circuit ordered a limited remand, on the Government's motion, in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  This matter is before the Court on *Crosby* remand.

## II.  **Relevant Facts**

The relevant facts are well set forth in the presentence investigation report at ¶¶9-25.  Only a brief summary will be set forth here.  On or about October 25, 2002, the defendant was using the Internet and was in a chat room frequented by young people who were dealing with difficult issues and looking for peer support.  Once there, the defendant struck up an online conversation with a minor girl, "L.B.", who indicated during the chat that, *inter alia*, she was unhappy and frustrated with her home life.  The defendant told L.B. that he helped other girls who were sad and that he wanted to help her. After and the on-line chat that lasted about two hours, the defendant told L.B. to call him at his home and provided her a phone number for that purpose. L.B. was residing in Westport, Connecticut and the defendant was in New Jersey.

Thereafter, the defendant talked to L.B. for approximately 10 hours, into the early morning hours of October 26, 2002, and convinced L.B. that she should run away.  The defendant advised L.B. how to run away; told her how to do it so no one would look for her (which she tried to do by leaving a suicide note); told her not to call a cab to her home but instead to walk to a different location to meet the cab; and to take the cab to the Bridgeport bus station where he would meet her to take her to his home.  The victim followed defendant's advice.  The defendant told the victim that other girls had come to

his house; that the victim would have independence; that she could see her friends and visit her family if she wanted.

The defendant traveled from New Jersey to Connecticut by bus and met the victim at the Bridgeport bus station. The defendant purchased a bus ticket for the victim under the name Amanda Wells explaining that the name was that of another girl he had helped. The defendant told the victim to call him "daddy" and provided a jacket for her to wear as a disguise of a sort. The defendant then accompanied the victim by bus to Philadelphia and then to his home in New Jersey.

Shortly after they arrived at his home, the defendant instructed the victim to put on her pajamas; the defendant put on a robe and lied down on his bed with the victim. Thereafter, the defendant engaged in various sexual activity with the victim, performing various sexual acts on her and requiring that she do the same to him. The following morning the victim was crying. The defendant told the victim to be quiet and not to open a window as he was not supposed to be alone with kids and he didn't want the neighbors to hear her. He told her he had served ten months in jail for having sex with a minor. Eventually, when the defendant went into the shower, the victim called a friend's mother and asked her to help her get home. The defenant permitted the victim to go and assisted her in meeting the friend's mother at the Philadelphia bus station.

Upon her return, the victim advised members of the Westport Police Department that she had engaged in sexual contact with the defendant. Later, when the victim was interviewed by Special Agent Kathy Shumaker, she disclosed significant additional sexual contact with the defendant.

When the defendant was arrested he admitted that he had traveled to Connecticut to pick up L.B. and returned with her to New Jersey. He further admitted limited physical contact with L.B., and although acknowledging that it included, among other things, touching of her breasts and his penis, he described the contact as non-sexual in nature.

As defendant himself acknowledged, he is no tyro to such activity. In Autumn 1999, the defendant communicated via the Internet with a 15 year old named Amanda who defendant convinced to run away from home in Illinois and to come to stay with him in Florida. Amanda did run away from home but was quickly tracked to the defendant's home. No charges were filed against defendant in connection with this incident. Defendant maintained contact with Amanda and convinced her to run away again. This time, defendant met Amanda near her home and took her to a nearby hotel where he engaged in sexual acts with her. According to the victim in that case, defendant performed oral sex on her and then had sexual intercourse with her multiple times. Upon his arrest in that case, defendant admitted knowing the victim was fifteen years old and admitted having sex with her.

The defendant was eventually charged in connection with this incident and federally prosecuted for violation of 18 U.S.C. §2343(b) and sentenced to one year and one day in jail of which he served approximately 10 months. Incredibly, defendant's term of supervised release in connection with that conviction was terminated early. The early termination is hard to understand for a number of reasons including the fact that defendant had violated the conditions of his release on a number of occasions. Moreover, defendant committed the instant offense while he was on supervised release.

Investigators developed evidence that the defendant had a Internet relationship with a third fifteen year old girl who was similarly troubled and who he was similarly urging to run away from home to be with him.

### III. Procedural History

Defendant Wells was arrested on May 13, 2003 upon an arrest warrant and criminal complaint authorized by United States Magistrate Judge Holly B. Fitzsimmons. On May 29, 2003, a grand jury sitting in New Haven, Connecticut returned an indictment charging the defendant in two counts with violation of Title 18 U.S.C. § 2423(b) (interstate travel to engage in illegal sexual activity with a minor) and Title 18 U.S.C. § 2423(a) (transporting a minor in interstate commerce). On October 30, 2002, a superseding indictment was returned by the same grand jury charging the same offenses and adding one count of violation of Title 18 U.S.C. § 2422(b) (enticement of a minor).

Following two separate competency exams which found him competent to stand trial, defendant and his counsel engaged in plea negotiations with the Government. It was determined that, owing to defendant's prior conviction in Florida for a sex offense (*see* PSR ¶ 39), defendant was subject to the enhanced penalties found at U.S.S.G. § 4B1.5 (Repeat and Dangerous Sex Offender Against Minors). Defendant and the Government ultimately agreed to resolve the charges pending against defendant by allowing him to plead to a one count substitute information charging him with kidnaping. The plea agreement between the parties specifically reserved the right for both the defendant and the Government to argue for a departure from the resulting sentencing guideline range (*See* Plea Agreement at 4). The plea agreement further provided:

> **The defendant acknowledges that this plea, if accepted by the Court, will result in a significantly lower guideline range than if he were convicted of the offenses identified in the indictment, insofar as he will not be adjudicated a repeat sex offender and therefore subject to the guidelines located at USSG §4B1.5. This guideline, if applied to the defendant would result in a Criminal History Category V, and an adjusted offense level of 29, with a commensurate guideline range of 168-210 months.**

*See* Plea Agreement at 4 (emphasis supplied).

On August 25, 2004 defendant entered his plea of guilty to the one count information charging him with violation of Title 18 U.S.C. § 1201(a)(1) pursuant to a plea agreement with the Government. A presentence investigation report wasprepared by the Probation Office which correctly calculated defendant's

sentencing guideline range to be 70-87 months to be followed by a 3-5 year term of supervised release. *See* PSR ¶¶ 78, 80. The presentence report also invited the Court to consider an upward departure from the stated guideline range pursuant to U.S.S.G. § 5K2.21 to reflect that actual seriousness of the offense. *See* PSR ¶ 87.

The defendant submitted a sentencing memorandum dated November 24, 2004, in which he objected to the Court's consideration of an upward departure pursuant to U.S.S.G. § 5K2.21 and urged the Court to consider a downward departure based on alleged childhood abuse and resulting mental and emotional issues.

The Government submitted a sentencing memo supporting the Probation Office's recommendation of an upward departure pursuant to U.S.S.G. §5K2.21 and suggesting an alternate basis for an upward departure. The Government argued that U.S.S.G. § 4A1.3 encourages a sentencing court to depart upward "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that defendant will commit other crimes." *Id.* The Government posited that the criminal conduct described in paragraphs 39-47 of the PSR demonstrated the inadequacy of the resulting criminal history category III; a conclusion that was buttressed by the fact that, pursuant to U.S.S.G. § 4B1.5, if that provision were applied here, defendant would automatically qualify for

criminal history category V.

On December 2, 2004 the Court conducted a sentencing hearing. At the conclusion of the hearing, the Court made the following factual findings in support of its determination to depart upward from the applicable guideline range:

> The top of the guideline range was 87 months. The Court considers that inadequate. The upward departure is based on 5K2.21 and 4A1.3, and the Court would note that it believes that it has authority to depart upward under either of those sections, and would have departed upward under either of those sections, but also believes that it has authority to depart under – pursuant to both of those sections. So, in effect, the Court believes it has independent authority under either or both.
>
> With respect to 4A1.3, the Court believes that Mr. Wells is a repeat sex offender. He has two incidents with minors that were uncharged. One was a teenager, the 15 year old from Illinois, who he induced to come to Florida, and was never prosecuted for that. She returned to Illinois and, within a few weeks, he traveled from Florida to Illinois, contacted her again, and then traveled with her from Illinois to Florida, although they were intercepted by authorities in Kentucky, and he was arrested at that time.
> The sentence that he received in Florida for that incident, he was exposed to a guideline range sentence of 12 to 18 months. He was sentenced to a year and a day, which meant that he was eligible for release after roughly ten months.
>
> The Court finds that that was a very lenient sentence given the circumstances, and the fact that he was released from supervised release, that his supervised release in New Jersey was terminated early, also constitutes extreme leniency, leniency that the Court almost finds difficult to believe that any professional trained probation officer could ever have agreed to.
>
> So, he's received very lenient treatment in the past.
>
> So, the sentence of the Court is based on all the aforesaid, the

>Court is departing upward, sentences him to 120 months. No fine is imposed.

The judgment and Commitment Order reflects that the basis for the Court's upward departure was both "pursuant to 5K2.21 Dismissed and Uncharged Conduct and 4A1.3 Adequacy of Criminal Category." *See Judgment and Commitment Order at 1.* Thus, the Court departed upward 33 months from the high end of the calculated guideline range.

Following imposition of sentence, the defendant filed a timely notice of appeal. The Government moved to stay the appeal and for a limited remand in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). On June 1, 2005, the Second Circuit granted the Government's motion and ordered a limited remand.

## IV. Discussion

### A. Post Booker Proceedings

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines

"effectively advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at 765-66.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*Crosby*, 397 F.3d at 113 (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in

section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.* at 114.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Id.* at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id.* "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." *Id.* at 120. The defendant should, however, have an "opportunity . . . to avoid resentencing by promptly notifying the district judge that resentencing will not be sought." *Id.* at 118. "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the

11

sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c)." *Id.* at 120.

### B. The Court Should Impose the Same Sentence

With the foregoing guidance in mind, the Court should conclude that it would not impose a materially different sentence. The Court originally determined that the ten (10) year sentence was appropriate under the guideline regime. It should reach the same conclusion post-*Booker* under either a guideline sentence or a non-guideline sentence, when considering all the factors articulated in 18 U.S.C. § 3553.

Prior to *Booker,* our appellate court reviewed downward departures under the standard prescribed by the Feeney Amendment, which was *de novo* review. This portion of the Feeney Amendment, codified at 18 U.S.C. § 3742(e), was excised by *Booker* and replaced with "reasonableness" review. "An error in determining … the availability of departure authority" remains, however, "the type of procedural error that could render a sentence unreasonable under *Booker.*" *United States v. Selioutsky,* 409 F.3d 114, 118 (2d Cir.2005). The Second Circuit will, therefore, continue to review a district court's exercise of departure authority, by inquiring "whether the [d]istrict [c]ourt abused (or exceeded) its discretion." "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application

of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision--though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be located within the range of permissible decisions." *United States v. Brady*, No. 04-729, 2005 WL 1706509 *5 (2d. Cir. July 22, 2005) (internal citations omitted).  Here, it is respectfully submitted, affirmation of the original sentence imposed would not constitute an abuse of discretion and would be "reasonable" under all the circumstances.

It is anticipated that defendant will once again argue, as he did in connection with the original sentencing, that it would be inappropriate for the Court to depart upward from the calculated guideline range because the adjusted offense level already takes into account the offenses alleged in the dismissed counts of the indictment.  This argument should be rejected.

Amendment 604 to the sentencing guidelines, effective November 1, 2000,  permits sentencing courts to consider as a basis for an upward departure aggravating conduct that is dismissed or not charged in connection with a plea agreement. See U.S.S.G. App. C, para. 604 (2001).  U.S.S.G. § 5K2.21 permits a district court to increase the sentence above the guideline range to reflect the actual seriousness of the offense based on conduct (1) . . . underlying a potential charge not pursued in the case as part of a plea agreement . . . and (2) that did not enter into the determination of the applicable guideline range." *Id.*

Defendant will likely argue that the Court should not use this invited departure basis because defendant's kidnaping guideline was increased pursuant to U.S.S.G. § 2A4.1(b)(7) and, therefore, the conduct in the dismissed counts of the indictment did in fact enter into the determination of the applicable guideline range. What defendant does not address, however, is the fact expressly recognized as part of the plea agreement in this case and that is that by pleading guilty to the kidnaping offense he will not be adjudicated a repeat sex offender and therefore avoids being subject to U.S.S.G. § 4B1.5. This guideline, if it were applied to the defendant, would significantly increase both his guideline offense level and his criminal history category subjecting him to a guideline range of **168-210** months' imprisonment rather than 70- 87 months. Thus, as recognized in the plea agreement, the fact that defendant is a repeat sex offender did not enter into a determination of the applicable guideline range.

Relatedly, U.S.S.G. § 4A1.3 encourages a sentencing court to depart upward "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that defendant will commit other crimes." *Id.* The criminal history category may also be found inadequate based on prior adult criminal conduct that does not result in a criminal conviction. *See United States v. Livoti*, 196 F.3d 322, 328 (2d Cir. 1999). Here, the criminal conduct

14

described in paragraphs 39-47 of the PSR demonstrate the inadequacy of the resulting criminal history category III. That category simply does not reflect the seriousness of this defendant's criminal past and the likelihood that he will reoffend. That conclusion is buttressed by the fact that, pursuant to U.S.S.G. § 4B1.5, if that provision were applied here, defendant would automatically qualify for criminal history category V.

It is anticipated that defendant will argue that an upward departure based on § 4A1.3 is not appropriate because defendant's prior conviction was properly calculated and defendant received a sentence for that offense within the calculated guideline range. While this may be true, for the reasons discussed above, – under § 4B1.5 had it been applied defendant's criminal history score would automatically be V --the Court may properly consider that, as a repeat sex offender, defendant's criminal history score does not reflect the seriousness of his criminal past and the likelihood of recidivism.

Further, as the Second Circuit observed in *United States v. Gayle*, 389 F.3d 406 (2d Cir. 2004) inadequacy of a defendant's criminal history is an encouraged basis for departure. Our appellate court further observed that likelihood of recidivism is properly gauged by considering the defendant's entire record to determine whether it involves factors "of a kind, or to a degree not adequately taken into account by the Sentencing Commission." 18 USC 3553(b)(1). Here, like in *Gayle*, the defendant was the beneficiary of lenient

treatment as evidence by his sentence of one year and one day of which he served 10 months, and the early termination of his supervised release. Moreover, the record reflects that defendant was not prosecuted in connection with the first enticement of Amanda from Illinois and was not prosecuted for his attempted liaison with the 15 year old girl described above. Finally, defendant was the beneficiary of lenient treatment even in this case where he was permitted to plea to kidnaping instead of an offense that would have subjected him to an enhancement as a repeat and dangerous sex offender against minors with a resulting guideline range of 168 to 210 months.

Finally, to the extent defendant may argue that an upward departure is not appropriate based on U.S.S.G. §4A1.3 because his prior criminal history was already considered when arriving at his guideline range, the Second Circuit's recent decision in *United States v. Weisser*, No. 01-1588 1995 WL 1560350 (2d Cir. July 5, 2005) is instructive. In that case the Second Circuit observed that defendant's criminal past, even if he has already been punished for past transgressions, can be considered by the court when determining whether a departure is appropriate under §4A1.3. As the Court observed, "Section 4A1.3 itself lists prior punishment as a factor to be considered. *See* U.S.S.G. §4A1.3(a),(b)" *Id* at *10.

**V.     Conclusion**

For the reasons discussed herein, the Court should reaffirm the ten (10) year sentence previously imposed as both a proper upward departure from the applicable guideline range and as a reasonable non-guideline sentence after consideration of all the 18 U.S.C. § 3553 factors.

          Respectfully submitted,

          KEVIN J. O'CONNOR
          UNITED STATES ATTORNEY

          s/
          JAMES I. GLASSER
          COUNSEL TO THE U.S. ATTORNEY
          FEDERAL BAR No. CT0772
          157 CHURCH STREET
          NEW HAVEN, CT 06510
          (203) 821-3700

CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was forwarded on this date via facsimile and regular mail to: Thomas P. Belsky, Assistant Federal Public Defender, 2 Whitney Avenue, Suite 300, New Haven, CT 06510 and Sandra Hunt, United States Probation Officer, United States Probation Office, 157 Church Street, New Haven, CT on this the 3rd day of August 2005.

          s/
          JAMES I. GLASSER
          COUNSEL TO THE U.S. ATTORNEY