UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| vs. : | CRIMINAL NO. 3:03CR160(AHN) |
| THEODORE WELLS : | August 4, 2005 |

DEFENDANT'S MEMORANDUM RE: LIMITED SENTENCING REMAND

The Defendant, Theodore Wells, respectfully submits this memorandum as an aid to the Court in carrying out its duties in light of the Second Circuit's order directing a limited remand of this case in light of United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

**I. Background.**

On August 25, 2004, Mr. Wells pled guilty to a one count information charging him with kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Mr. Wells' plea was based on conduct that occurred in April 2003. As part of the written plea agreement, Mr. Wells and the government agreed that, despite the Supreme Court's then-recent decision in Blakely v. Washington, ___ U.S. ___, 124 S. Ct. 2531 (2005), the sentencing guidelines still controlled Mr. Wells' sentencing and that the Court would determine Mr. Wells' sentence pursuant to the guidelines.[1] The parties stipulated in the agreement that under the guidelines Mr. Wells faced a sentencing range of 70-87 months' incarceration, although both parties acknowledged that this stipulation did not bind the Court.

At Mr. Wells' sentencing, held November 30, 2004, both parties again agreed that the sentencing guidelines dictated determination of Mr. Wells' sentence. Consistent with this understanding, the Court determined Mr. Wells' guideline range, departed upward pursuant to §§ 4A1.3 and 5K2.21 of the sentencing guidelines, and imposed a sentence of 120 months' incarceration.

Mr. Wells subsequently appealed the Court's decision to depart upward. In his initial brief, filed

---

[1] This provision of the plea agreement reflected the current state of the law in the Second Circuit at the time of both Mr. Wells' plea and his sentencing. See United States v. Mincey, 380 F.3d 102 (2d Cir. 2004).

- 2 -

less than one month after the decisions in Booker and Crosby, Mr. Wells pursued his legal objections to the Court's bases for departing from the calculated guideline range. The government, however, moved the Second Circuit for a limited remand of the case pursuant to Crosby, so that this Court could determine whether, in light of the now advisory nature of the sentencing guidelines, it would have imposed a sentence different than the one it originally imposed under the then-mandatory sentencing guidelines. On June 1, 2005, the Second Circuit granted the government's motion, and on June 22, 2005, issued a mandate to this effect.

**II. Discussion.**

There has been uniform acknowledgment that the Booker decision, and in particular the remedial opinion rendering the sentencing guidelines advisory, significantly altered the federal sentencing scheme. Given that the current sentencing system is fundamentally different than the one that was in place at the time Mr. Wells committed his offense of conviction, at the time he entered his plea, and at the time of his sentencing, this Court, in determining whether to resentence Mr. Wells, must first decide whether applying Booker to this case implicates any *ex post facto* considerations. The Second Circuit has yet to decide whether applying Booker retrospectively implicates *ex post facto* concerns. Crosby, 397 F.3d at 117. Moreover, the simple fact that the Second Circuit has remanded this case does not imply that application of Booker is proper, as the Circuit's mandate merely stated that the remand was for a *determination* whether resentencing is necessary, it did not remand the case specifically for resentencing under a post-Booker scheme. Thus, before determining whether it would impose a "materially different sentence" post-Booker, see Crosby, 397 F.3d at 117, this Court must first determine whether it can lawfully apply Booker to Mr. Wells' case. Mr. Wells respectfully asserts that *ex post facto* considerations prevents the Court from doing so.

The *Ex Post Facto* Clause prohibits Congress from passing laws that retroactively increase the punishment for a committed offense. U.S. Const. art. I, § 9, cl. 3; Miller v. Florida, 482 U.S. 423, 429 (1987). While the Clause, by its terms, applies only to acts of the legislature, the Supreme Court has recognized that the Due Process Clause imposes similar limitations on acts of the judiciary. Marks v.

- 3 -

United States, 430 U.S. 193, 191-92 (1977); Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964). Relying on core due process concepts of notice, foreseeability, and right of fair warning, the Supreme Court has held that if the *Ex Post Facto* Clause prevents a legislature from achieving a certain result, it must follow that the Due Process Clause prevents a court, though judicial construction, from achieving precisely the same thing. Bouie, 378 U.S. at 353-54. For a judicial decision to violate due process in this way, however, the decision must have been "unforeseeable," such that it deprived the defendant of fair notice of the consequences of his conduct at the time of commission. Id. at 352; United States v. Russotti, 780 F. Supp. 128, 133 (S.D.N.Y. 1991). Given these constitutional limitations, application of the Booker remedial decision in this case will violate *ex post facto* aspects of the Due Process Clause if: (1) the decision was "unforeseeable;" and (2) applying the decision would expose Mr. Wells to greater punishment than he presumptively faced for his offense of conviction at the time he committed his crime.

Turning to the question of foreseeability, there can be no serious dispute that the Booker remedy was anything but "unforeseeable."[2] Until Booker, there was no question that the guidelines controlled federal sentencing and determined a defendant's sentence in virtually all cases. The statute's plain language dictated that sentencing courts "shall impose a sentence" in accordance with the sentencing guidelines, and the Court's own precedent had repeatedly heralded the guidelines' superiority at federal sentencing. Stinson v. United States, 508 U.S. 36, 42 (1993); Mistretta v. United States, 488 U.S. 361, 391 (1988). Booker, however, represented a stark break from this precedent. In fact, it literally tore from the books a portion of the federal sentencing statute that it had previously and consistently endorsed. To be sure, the remedial opinion did not cite a single decision that foretold the dramatic result it reached. Bouie, 378 U.S. at 356-57 (noting that there was no specific precedent for the state supreme court's unique interpretation of the statute in question in that case). The unprecedented nature of the remedy in Booker did not escape Justice Stevens who, in his dissent, noted that the "novelty of

---

[2] Mr. Wells notes that the proper focus of this question is on the Booker remedial decision, as it was this portion of the Booker case that dramatically altered the federal sentencing structure by eliminating the mandatory nature of the sentencing guidelines.

this remedial maneuver perhaps explains why *no party or amicus curie* to this litigation has requested the remedy the Court now orders." Booker, 125 S. Ct. at 777 (Stevens, J., dissenting) (emphasis in original). Given all this, the Court should find that the remedy espoused in Booker, eliminating the binding nature of the sentencing guidelines, truly was "unforeseeable."

Having found the Booker remedy "unforeseeable," the Court must next decide whether the decision exposes Mr. Wells to greater punishment than he faced at the time he committed his offense of conviction. At the outset, Mr. Wells notes that the proper focus of this question is not whether the change in the law increased the maximum sentence authorized under the statute of conviction. Instead, the focus is whether the change "produces a sufficient risk of increasing the measure of punishment attached for the covered crime[]." California Dep't. of Correction v. Morales, 514 U.S. 499, 509 (1995); Miller, 482 U.S. at 432-33. The Supreme Court's decision in Miller illustrates this fact.

In Miller, the Court considered whether a change in Florida's sentencing guideline scheme violated the *Ex Post Facto* Clause where it increased the appellant's presumptive guideline range after the commission of his offense, but did not alter the statutory maximum for the offense. Miller, 482 U.S. at 425-27. At the time of the appellant's offenses, the state's sentencing guidelines exposed him to a presumptive sentence of 3.5 to 4.5 years' imprisonment, well below the statutory maximum for the offense of conviction. Id. at 424, 426-27. To sentence the appellant to a greater term of imprisonment, the sentencing judge had to have found clear and convincing reasons, and stated these reasons in writing. Id. at 426. At the time of sentencing, however, an intervening change to the guidelines increased the appellant's presumptive range to 5.5 to 7 years' imprisonment. Id. at 427. Consistent with this new range the sentencing judge imposed a 7-year sentence. Id. at 428. The appellant appealed, claiming that the change in his presumptive sentence violated the *Ex Post Facto* Clause. The Supreme Court unanimously agreed. Id. at 435-36.

The Court began its opinion noting that a law is *ex post facto* if it (1) is retrospective; and (2) "disadvantage[s] the offender affected by it." Id. at 430. The Court had little trouble finding the law in question retrospective, despite the fact that it did not alter the statutory maximum, because the

appellant had no notice or warning at the time he committed his offense that he would be subject to a presumptive sentence of 5.5 to 7 years in prison. Id. at 431. This lack of notice, by itself, made the law retrospective.

Next, the Court explained how the new law disadvantaged the appellant. It began by noting that an *ex post facto* challenge is not barred "simply because the sentence [a defendant] received under the new law was not more onerous than that which he might have received under the old." Id. at 432. The important fact, the Court concluded, was that the new law effectively made it easier for the sentencing judge to impose a higher sentence. Id. at 432-33. The Court explained that

> [t]o impose a 7-year sentence under the old guidelines, the sentencing judge would have [had] to depart from the presumptive sentencing range of 3 ½ - 4 ½ years. As a result, the sentencing judge would have [had] to provide clear and convincing reasons in writing for the departure, on facts proved beyond a reasonable doubt, and his determination would be reviewable on appeal. By contrast, because a 7-year sentence [was] within the presumptive range under the revised law, the trial judge did not have to provide any reasons, convincing or otherwise, for imposing the sentence, and his decision was unreviewable.

Id. at 423-33. The Court found that the judge's ability to impose the higher sentence without any explanation under the new law, and the appellant's inability to appeal that sentence, "substantially disadvantaged" the appellant, and amounted to an *ex post facto* violation. Id. at 433. The same problems exist applying Booker to Mr. Wells' case.

As mentioned earlier, at the time of Mr. Wells' offense, his plea, and his sentencing, there was no question that the sentencing guidelines determined his sentence. Under the guidelines, Mr. Wells knew that he faced a presumptive sentence of 70-87 months' confinement, and he knew that the Court could depart from this presumptive range only under a few specifically identified circumstances. Indeed, it was commonly accepted that departures from a calculated guideline range were to be "highly infrequent," U.S.S.G. § 1A1.1 (ch. 1, pt. A.4(b)), and in the vast majority of cases sentencing judge's were "bound to impose a sentence within the Guidelines range." Booker, 125 S. Ct. at 750. Therefore, when deciding whether to plead guilty, for example, Mr. Wells could take into account his presumptive sentencing range, and more importantly, consider the well documented circumstances under which the Court could depart from this range, and ultimately make an informed decision whether to accept these

- 6 -

sentencing prospects and plead guilty or maintain his presumption of innocence.

In light of Booker, however, which essentially re-instates an indeterminate sentencing regime, Mr. Wells' presumptive sentencing range expands to the minimum and maximum sentence listed in the statute of conviction – in this case as much as life in prison. Moreover, the Court post-Booker can impose a sentence anywhere within this new range so long as it is "reasonable," see Booker, 125 S. Ct. at 766, and can rely on virtually any internal justification for the sentence. See generally Blakely, 124 S. Ct. at 2540 (noting that under an indeterminate sentencing scheme, a judge "may implicitly rule on those facts he deems important to the exercise of his sentencing discretion"). Indeed, going from a sentencing system where the Court was "bound" to impose a sentence within a presumptive range, absent highly extraordinary and well-defined circumstances which a defendant could specifically challenge on appeal, to an amorphous system with no defined limits other than "reasonableness" presents the same concerns that led the Court in Miller to find an *ex post facto* violation. Just as the law in Miller improperly made it easier for the judge to impose a higher sentence and deprived the appellant of an effective means of appealing the sentence, Booker likewise would make it easier for this Court to impose a higher sentence in this case, while at the same time severely limiting Mr. Wells' ability to challenge such a sentence on appeal. Therefore, consistent with Miller, this Court should not apply the Booker remedy in this case.

It is important to note that choosing to refrain from applying Booker in this case offends nothing in the decision itself. First, as the remedy decision made painstakingly clear, the only reason for the particular result in Booker was the Court's initial holding that mandatory operation of the sentencing guidelines violated a defendant's Sixth Amendment right to a jury. Booker, 125 S. Ct. at 767-68. Given that Mr. Wells waived this right as part of his plea agreement, application of the sentencing guidelines in this case offends neither Booker nor the Sixth Amendment. See Shepard v. United States, ___ U.S. ___, 125 S. Ct. 1254, 1263 n.5 (2005) (noting that a defendant could waive his right to have a jury decide questions about his prior convictions); Blakely, 124 S. Ct. at 2541 (noting that nothing prevents a defendant from waiving his rights under Apprendi v. New Jersey, 530 U.S. 466 (2000)).

- 7 -

Additionally, nothing in Booker, or any other opinion from the Supreme Court, suggested that concept of the sentencing guidelines or determinate sentencing schemes in general were impermissible. Booker 125 S. Ct. at 767; Blakely, 124 S. Ct. at 2540 (noting that it was not holding determinate sentencing schemes unconstitutional *per se*). To the contrary, the Court went to great lengths in Booker to explain that it felt compelled to reach the remedy it did solely because of the constitutional holding of the Court's substantive opinion. To be sure, the Court made clear that a majority of the sentencing guideline system stays in place, and influences federal sentencing, although admittedly not to the same degree it had before Booker. For example, the Sentencing Commission continues to exist, collecting data, undertaking research, and revising the guidelines accordingly. Id. at 767. More importantly, sentencing judges must still "consult" the guidelines and "take them into account" when imposing sentence. Id. Thus, given that Mr. Wells has waived any Sixth Amendment concern, and given that applying Booker violates *ex post facto* considerations, it is appropriate for the Court to hold that the sentencing guidelines apply in a mandatory fashion in this case.

In sum, because the Booker remedy decision would retroactively expose Mr. Wells to the possibility of greater punishment, and would limit his ability to effectively appeal any such sentence, *ex post facto* considerations of the Due Process Clause prohibits the Court from applying the decision to this case. Instead, the Court should hold to its initial ruling that the sentencing guidelines controlled Mr. Wells' sentencing. Under this scenario, Mr. Wells respectfully reasserts the same objections he raised at his initial sentencing regarding the Court's decision to depart upward from Mr. Wells' presumptive guideline range pursuant to sections 4A1.3 and 5K2.21 of the guidelines.

Alternatively, should the Court find that the Booker remedy opinion *does* apply to Mr. Wells' case, the same *ex post facto* considerations discussed above prevent the Court from imposing a sentence greater than 87 months' incarceration, the top of Mr. Wells' presumptive guideline range. This argument is again based on the premise that under the sentencing system in place at the time of Mr. Wells' offense, his plea, and his sentencing, Mr. Wells had a "legal right" to a sentence of no greater than 87 months, absent the existence of specific grounds for an upward departure precisely set out in

the guidelines themselves. See generally Blakely, 124 S. Ct. at 2540. Moreover, Mr. Wells had the right not only to have the Court specifically articulate any ground it relied upon to impose a sentence higher than 87 months, but also could rely on nearly two decades of case law interpreting these grounds to appeal the propriety of such a decision. Under Booker, however, a defendant is merely left with a claim on appeal that the sentence was "unreasonable." Such diminished appeal rights surely makes imposing a greater sentence easier under a Booker sentencing system than under the sentencing guidelines. Thus, were the Court to impose the same 120 month sentence in this case as a post-Booker "non-guideline" sentence, based on a general determination that this is an appropriate sentence, Mr. Wells would be left with a much less concrete challenge on appeal. This diminished ability to challenge a particular sentence, in part, led the Supreme Court in Miller to conclude that the change in the law in that case violated the *Ex Post Facto* Clause. Accordingly, this Court should likewise find that using Booker to impose a "non-guideline" sentence higher than that to which Mr. Wells was legally entitled under the guidelines also violates *ex post facto* aspects of due process, and should therefore impose a sentence no greater than 87 months' confinement unless it does so specifically pursuant to the sentencing guidelines.

**III. Conclusion.**

For the foregoing reasons, Mr. Wells respectfully requests the Court hold that, for *ex post facto* reasons, the sentencing guidelines remain mandatory in his case, and reaffirm its initial sentencing decision imposed pursuant to the guidelines. In the alternative, should the Court find that Booker does apply to Mr. Wells' case, Mr. Wells respectfully requests that, to avoid constitutional implications, the Court impose a sentence of no greater than 87 months' confinement.

Mr. Wells respectfully requests oral argument on this matter, but pursuant to Rule 43(b)(3) of the Federal Rules of Criminal Procedure waives his personal appearance at such hearing. Alternatively, Mr. Wells requests that if possible he participate either telephonically or by video conference. Counsel for Mr. Wells will actively investigate the possibility of using either method to enable Mr. Wells' participation in any hearing.

- 9 -

Respectfully submitted,

THE DEFENDANT,
THEODORE WELLS

THOMAS G. DENNIS
FEDERAL DEFENDER

Dated: August 4, 2005

_____
Thomas P. Belsky
Asst. Federal Defender
2 Whitney Ave., Suite 300
New Haven, CT 06510
Bar No. ct24770
(203) 498-4200

CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing has been mailed to James Glasser, Assistant United States Attorney, P.O. Box 1824, New Haven, CT 06508, on this ____4th____ day of August 2005.

_____
Thomas Belsky